UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIM E. LARSEN, | ) |
| | ) CASE NO. C13-2018-MJP-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting | ) DISABILITY APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Kim E. Larsen proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED and REMANDED for additional proceedings.

//

//

REPORT AND RECOMMENDATION
PAGE -1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1954.[1]  He graduated from high school and attended one year of college, and received vocational training as a machinist.  (AR 191-92.)  He previously worked as a machinist at Boeing.  (AR 187.)

Plaintiff protectively filed applications for DIB and SSI on September 18, 2009, alleging disability beginning March 28, 2002.  (AR 146-55.)  His applications were denied at the initial level and on reconsideration.  (AR 69-75, 80-95.)

On June 2, 2011, ALJ Timothy Mangrum held a hearing, taking testimony from Plaintiff and a vocational expert.  (AR 37-64.)  On November 21, 2011, the ALJ issued a decision finding Plaintiff not disabled.  (AR 22-30.)

Plaintiff timely appealed.  The Appeals Council denied Plaintiff's request for review on September 12, 2013 (AR 1-7), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had recorded earnings since his alleged onset date, but that these did not rise to the level of substantial gainful activity. (AR 24.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's mild degenerative disc disease and depression. (AR 24-25.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 25-26.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), "except he has some difficulty in maintaining social functioning." (AR 26.) With that assessment, the ALJ found Plaintiff able to perform his past relevant work as a machinist, and thus did not proceed on to step five. (AR 29-30.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

REPORT AND RECOMMENDATION
PAGE -3

Plaintiff argues the ALJ erred in (1) finding his carpal tunnel syndrome (CTS) non-severe at step two; (2) assessing the opinion of examining physician Mark Magdaleno, M.D.; (3) assessing the opinion of examining psychiatrist Tanya Scurry, M.D.; (4) assessing the impact of his drug/alcohol use; and (5) finding, in light of a purportedly vague RFC assessment, that Plaintiff can perform his past work as a machinist as actually and generally performed. He asks that the ALJ's decision be reversed and remanded for further proceedings. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

## CTS

Plaintiff argues that the ALJ erred in finding that his CTS was not severe, because it caused more than minimal limitations in his ability to perform basic work activities. At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996 (quoting Social Security Ruling (SSR) 85-28, 1985 WL 56856 (Jan. 1, 1985)). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54).

///

In this case, the ALJ found that Plaintiff's CTS was not severe[2] after his carpal tunnel release surgeries, based on Dr. Magdaleno's February 2009 medical opinion that Plaintiff has no manipulative limitations post-surgeries.  (AR 25 (citing AR 414).)  Plaintiff points to electrodiagnostic evidence indicating that his CTS is "mild-to-moderate" (AR 603), and an opinion written by examining physician Sara Jackson, M.D., stating that Plaintiff's CTS caused marked limitations in lifting, handling, and carrying (AR 569).  The electrodiagnostic evidence is unaccompanied by an opinion identifying any functional limitations caused by CTS (AR 603) and thus does not support Plaintiff's argument, and the ALJ explained why he discounted Dr. Jackson's opinion as inconsistent with Dr. Magdaleno's opinion (AR 29).  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).  Thus, this evidence does not establish that the ALJ erred in assessing Plaintiff's manipulative limitations.

But Dr. Magdaleno also acknowledged that Plaintiff has "some limitations with wrist motion" (AR 414), and the ALJ did not fully explore the impact of those limitations.  Dr. Magdaleno indicated that Plaintiff's range-of-motion limitations did not impact his fine motor skills (AR 414), but it is not clear what impact they may have had on other aspects of Plaintiff's functioning.  The ALJ mentioned Dr. Magdaleno's note that Plaintiff continues to experience numbness in some of his fingers and his left hand and weakness in his right hand (AR 25 (citing AR 410)), but did not evaluate how this numbness/weakness impacted his

---

[2] Plaintiff argues that the ALJ applied the wrong definition of "severe" at step two. Dkt. 18 at 16.  The ALJ did find that CTS did not "significantly preclude[]" Plaintiff from doing basic work activities for twelve continuous months. (AR 25.)  Although the use of "preclude" suggests a more rigorous standard than set by the applicable regulations, the remainder of the paragraph addressing CTS is consistent with the regulations the ALJ cited and thus indicates that the ALJ properly apprehended the definition of "severe." (AR 24-25 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)

ability to do work activities. On remand, the ALJ shall reevaluate Dr. Magdaleno's opinion, and, if necessary, further develop the record as to the impact of Plaintiff's wrist-motion limitations to determine if Plaintiff's CTS is severe and/or whether any additional limitations should be incorporated into the RFC assessment.

Postural Limitations

Plaintiff challenges another aspect of the ALJ's assessment of Dr. Magdaleno's opinion, arguing that the ALJ failed to account for Dr. Magdaleno's opinion that Plaintiff's low back pain limited him to occasional stooping and crouching. (AR 414.) The ALJ gave significant weight to Dr. Magdaleno's opinion, but did not include any stooping/crouching restrictions in his RFC assessment. (AR 26, 28.)

Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ offered no reason for failing to incorporate Dr. Magdaleno's opinion regarding stooping/crouching restrictions into his RFC assessment, although he purported to credit Dr. Magdaleno's opinion. (AR 28.) Although the Commissioner argues that this error is harmless, because the machinist job identified at step four does not require stooping or crouching (Dkt. 21 at 5-6 n.3), the Court finds *infra* that the ALJ erred at step four and thus may need to reformulate the RFC assessment and/or alter the step-four findings on remand.

REPORT AND RECOMMENDATION
PAGE -6

Thus, on remand the ALJ shall reconsider Dr. Magdaleno's opinion regarding postural limitations, and either credit the opinion or provide sufficient reasons to discount it.

Dr. Scurry's Opinion

Dr. Scurry examined Plaintiff in February 2009 and opined that he was capable of performing simple tasks, but had moderate-to-marked limitations in many other aspects of work functioning. (AR 401-07.) The ALJ gave some weight to Dr. Scurry's opinion, but noted that because many of her opinions were "based on the claimant's active hallucinations," claims of which the ALJ found to be not credible, the ALJ discounted Dr. Scurry's opinion. (AR 28.)

The ALJ indicated that it was "Dr. Magdaleno" that "found good reason to question the claimant's claims of hallucinations" (AR 28), but this is a scrivener's error: Dr. Magdaleno did not address Plaintiff's hallucinations, but Steven Haney, M.D., did. (AR 467-75.) The ALJ explained why he relied on Dr. Haney's treatment notes to discount the credibility of Plaintiff's self-report, particularly his claims of hallucinations. (AR 27-28.) Plaintiff does not challenge the ALJ's adverse credibility determination (Dkt. 18 at 1-2), and that finding is a specific and legitimate reason to discount Dr. Scurry's opinion, which is rendered in reliance to at least some degree on Plaintiff's self-reporting. (AR 406-07 (citing "active hallucinations" as the basis for many of her functional opinions).) *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's

REPORT AND RECOMMENDATION
PAGE -7

prescription that was based on those less than credible statements.")

Drug and Alcohol Abuse

Plaintiff argues that the ALJ erred in factoring out the impact of his drug and alcohol abuse without performing the two-step procedure to determine the materiality of a claimant's substance abuse outlined by *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).  The ALJ mentioned Plaintiff's substance abuse twice in the decision: once when noting at step three that examining psychologists "have generally found that the claimant does not have significant cognitive impairments, at least apart from crack cocaine or alcohol abuse[,]" and for the second time when describing those psychologists' opinions in assessing Plaintiff's RFC. (AR 26, 29.)  The Commissioner did not respond to Plaintiff's argument that the ALJ erred in failing to first evaluate Plaintiff's impairments including the impact of his drug and alcohol abuse.

The Court nonetheless finds that Plaintiff has failed to establish prejudicial error flowing from the ALJ's discussion of his drug and alcohol abuse.  The ALJ did not find that Plaintiff has a substance abuse disorder, and Plaintiff has not assigned error to that finding. As such, the ALJ was not required to evaluate the materiality of Plaintiff's drug and alcohol abuse.  *See* SSR 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013) (explaining that a prerequisite to a materiality determination is a finding that a claimant has a medically determinable substance abuse disorder).

Step Four

Plaintiff contends the ALJ erred by including a vague restriction in his RFC

REPORT AND RECOMMENDATION
PAGE -8

assessment[3] (finding that Plaintiff had "some difficulty in maintaining social functioning" (AR 26)), and in finding that he retained the capacity to perform his past work as a machinist as generally and actually performed.

At step four, the ALJ must identify a claimant's functional limitations or restrictions, and assess his work-related abilities on a function-by-function basis, including a required narrative discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184 (Jul. 2, 1986). RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of a claimant's impairments, including those that are not severe, in determining his RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p.

Plaintiff bears the burden at step four of demonstrating that she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). A claimant may be found not disabled at step four based on a determination that she can perform past relevant work as it was actually performed or as it is generally performed in the national economy. SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). An ALJ need not render "explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). Instead, he need only make a sufficient finding pursuant to the applicable

---

3 Plaintiff also argues that the ALJ erred in finding at step three that he had mild difficulties with concentration, persistence, and pace, but in failing to include any mental limitations in the RFC assessment. Dkt. 18 at 10. This argument misunderstands the distinction between the step-three inquiry and the RFC assessment, and fails to establish error. *See* SSR 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

regulations. *Id*.

Although plaintiff bears the burden at step four, the ALJ retains a duty to make factual findings to support his conclusion, including a determination of whether a claimant can perform the actual demands and job duties of his past relevant work or the functional demands and job duties of the occupation as generally performed in the national economy. *Pinto*, 249 F.3d at 844-45 (citing SSR 82-61). "This requires specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id*. (citing SSR 82-62, 1982 WL 31386 (Jan. 1, 1982)). The DOT is generally considered the best source for determining how past relevant work is generally performed. *Id*. at 845-46.

Here, the ALJ's RFC assessment included a limitation on Plaintiff's social functioning, but in non-standard terms: "some difficulty in maintaining social functioning" does not use terminology familiar to the Dictionary of Occupational Titles (DOT).[4] The ALJ did not use this terminology when posing a hypothetical to the VE at the administrative hearing, either; at the administrative hearing, the ALJ asked the VE to assume that the hypothetical claimant was limited to "occasional" interaction with co-workers and the general

---

4 Although the RFC assessment is phrased in non-standard terms, it is not necessarily prejudicially vague because it could have been explained to a VE. *See, e.g.*, *Turcotte v. Astrue*, 2010 WL 2036141, at *5-6 (C.D. Cal. May 19, 2010) (finding that an RFC assessment stating that a claimant is "limited in reading and writing" was properly explained in a VE hypothetical). What complicates the ALJ's use of non-standard terms, however, is the fact that the ALJ did not pose a hypothetical to the VE using the wording ultimately found in his RFC assessment. *Compare* AR 26 *with* AR 62. On remand, if VE testimony will be sought, the ALJ shall pose a hypothetical consistent with whatever formulation of the RFC assessment he intends to rely upon. *See Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.' If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

public. (AR 62.) The VE testified that the hypothetical claimant could not perform Plaintiff's past work as defined by DOT 600.387-018. (*Id.*)

But the ALJ independently found that Plaintiff could, in fact, perform his past work as a machinist as generally and actually performed, citing a different job classification, DOT 601.280-054.[5] (AR 29-30, 61.) He found that the "machinist job for a commercial airlines manufacturer tends to be working with things rather than with people." (*Id.*) That description is arguably consistent with aspects of the DOT's description of one type of machinist job. *See* DOT 601.280-054 (indicating that the job involves "significant" involvement with setting up things and "not significant" involvement with taking instructions/helping people). It is unclear how the ALJ selected this type of machinist job from the many machining-related jobs listed in the DOT, when the VE had apparently classified Plaintiff's past work as a different type of machinist job and found that he could not perform that work in light of the hypothetical posed. (AR 61.) No part of the DOT section cited by the ALJ, DOT 601.280-054 ("Tool-Machine Set-Up Operator"), indicates that the job description contemplates work for a commercial airlines manufacturer, as the ALJ suggested. (AR 29.) Thus, the ALJ's finding that Plaintiff's past relevant work is encapsulated in DOT 601.280-054, one of the many DOT job titles involving machinist work, is not supported by substantial evidence.

Furthermore, the DOT does not exhaustively describe the social demands of the machinist job selected by the ALJ, rendering it impossible to determine from the face of the DOT whether a limitation such as "some difficulty in social functioning" comported with

---

[5] The Commissioner concedes that Plaintiff's description of how his job was actually performs exceeds the ALJ's RFC assessment. Dkt. 21 at 12 n.8.

REPORT AND RECOMMENDATION
PAGE -11

Plaintiff's past relevant work. Although the Commissioner argues that because the DOT description is not *inconsistent* with the ALJ's RFC assessment, there is no error, the Court disagrees because the ALJ is required to consider *inter alia* the social demands of past relevant work at step four and enter findings as to the claimant's ability to meet those demands. *Pinto*, 249 F.3d at 844-45; *see also* SSR 82-61, 1982 WL 31387, at *2 ("For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a [VE]."). It can be inferred from the VE's testimony that machinist jobs have social demands in excess of what is described in the DOT (AR 61-62), which undermines the ALJ's conclusory description of the demands of a commercial airlines manufacturer machinist and the Commissioner's argument defending that description.

    Accordingly, on remand, the ALJ shall: (1) reconsider the job classification for Plaintiff's past relevant work and explain his findings in that regard with citation to substantial evidence, (2) enter findings as to the social demands of that past relevant work, and (3) present a hypothetical to a VE (if additional vocational testimony is obtained) that states all of Plaintiff's limitations using terminology consistent with the RFC assessment.

//

//

//

//

//

//

## CONCLUSION

For the reasons set forth above, the Court recommends this matter should be REVERSED and REMANDED for further proceedings.

DATED this <u>12th</u> day of June, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -13